UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE BERNAL-IBANOS,<br><br>              Petitioner,<br><br>   v.<br><br>NEIL H. ADLER,<br><br>              Respondent. | 1:09-cv-00183-JLT HC<br><br>ORDER GRANTING RESPONDENT'S MOTION TO DISMISS (Doc. 17)<br><br>ORDER DENYING PETITIONER'S MOTION TO DISMISS (Doc. 18)<br><br>ORDER DISMISSING PETITION FOR WRIT OF HABEAS CORPUS (Doc. 1)<br><br>ORDER DIRECTING CLERK OF COURT TO ENTER JUDGMENT AND CLOSE FILE |

**PROCEDURAL HISTORY**

      Petitioner is a federal prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

      The instant petition for writ of habeas corpus was filed on January 29, 2009. (Doc. 1). The petition challenges the results of a 2008 prison disciplinary hearing finding Petitioner guilty of possession of a cell phone. (Id.). On April 2, 2009, the Court ordered Respondent to file a response. (Doc. 6). On July 13, 2009, Respondent filed the instant motion to dismiss, contending that Petitioner had failed to state a claim upon which habeas relief could be granted. (Doc. 17). On August 21, 2009, Petitioner filed his opposition to the motion to dismiss, contending that said motion should itself be dismissed under the Court's procedural rules. (Doc. 18).

**DISCUSSION**

A.  Jurisdiction

Relief by way of a writ of habeas corpus extends to a person in custody under the authority of the United States. See 28 U.S.C. § 2241. While a federal prisoner who wishes to challenge the validity or constitutionality of his conviction must bring a petition for writ of habeas corpus under 28 U.S.C. § 2255, a petitioner challenging the manner, location, or conditions of that sentence's execution must bring a petition for writ of habeas corpus under 28 U.S.C. § 2241. See, e.g., United States v. Giddings, 740 F.2d 770, 772 (9th Cir.1984); Brown v. United States, 610 F.2d 672, 677 (9th Cir. 1990). To receive relief under 28 U.S.C. § 2241, a petitioner in federal custody must show that his sentence is being executed in an illegal, but not necessarily unconstitutional, manner. See, e.g., Clark v. Floyd, 80 F.3d 371, 372, 374 (9th Cir. 1995) (contending time spent in state custody should be credited toward federal custody); United States v. Jalili, 925 F.2d 889, 893-94 (6th Cir. 1991) (asserting petitioner should be housed at a community treatment center); Barden v. Keohane, 921 F.2d 476, 479 (3d Cir. 1991) (arguing Bureau of Prisons erred in determining whether petitioner could receive credit for time spent in state custody); Brown v. United States, 610 F.2d 672, 677 (9th Cir. 1980) (challenging content of inaccurate pre-sentence report used to deny parol).

Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution.  Petitioner's claims arise out of a disciplinary hearing conducted on April 24, 2008, after which the DHO found that Petitioner committed the prohibited act of Possession or Introduction of a Hazardous Tool, i.e., a cellular telephone.  (Doc. 1, pp. 15-16).  Petitioner contends that (1) insufficient evidence supported the DHO's finding of guilt, and (2) Petitioner did not receive the required notice of charge because the notice he did receive was for a crime he did not commit, i.e., possession of a hazardous tool.  (Id., p. 3).  As a result of the hearing, Respondent sanctioned Petitioner with a loss of forty days of good conduct time and 20 days of disciplinary segregation. (Doc. 17, Ex. A).  If a constitutional violation has resulted in the loss of time credits, such violation affects the duration of a sentence and may be remedied by way of a petition for writ of habeas corpus.  Young v. Kenny, 907 F.2d 874, 876-878 (9th Cir. 1990).

Here, Petitioner is challenging the result of a prison disciplinary hearing that resulted in a loss

of credits. Thus, he is challenging the execution of his sentence, which is maintainable only in a habeas corpus proceeding. Tucker v. Carlson, 925 F.2d 330, 331 (9th Cir. 1990). Furthermore, because Petitioner is challenging the execution of his sentence at Taft Correctional Institution ("TCI"), and TCI is within the Eastern District of California, Fresno Division, this Court has jurisdiction over the petition. See Brown v. United States, 610 F.2d 672, 677 (9th Cir. 1990).

B. Procedural Grounds for Motion to Dismiss

Respondent has filed a motion to dismiss the petition for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. Proc. 12(b)(6). (Doc. 17, p. 3). Along with the motion, Respondent has submitted various documents, including the Disciplinary Hearing Officer's ("DHO") report, the original incident report, and an advisement of rights signed by Petitioner. (Doc. 17, Exs. A, B, & C). Reading Respondent's arguments and submitted exhibits, it is clear that Respondent is, in essence, arguing the merits of Petitioner's claims, not a procedural deficiency such as lack of exhaustion or federal jurisdiction.

For his part, Petitioner objects to the legal basis on which Respondent brings the motion, i.e., Rule 12(b)(6), contending, somewhat inconsistently, that the Court should follow the requirements of Rule 12(b)(6) by construing all facts in the light most favorable to Petitioner and dismissing the case only if it appears beyond doubt that Petitioner can prove no set of facts in support of his claim which would entitle him to relief. (Doc. 18, pp. 1-2). Petitioner also contends that converting the motion to dismiss into a motion for summary judgment would be inappropriate since the documents submitted by Respondent were documents about which Petitioner already had notice and upon which he had relied in preparing his petition. (Id. at p. 2). For the reasons set forth below, the Court will follow neither Respondent's nor Petitioner's procedural path.

Rule 4 of the Rules Governing Section 2254 Cases allows a district court to dismiss a petition if it "plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court . . . ." Rule 4 of the Rules Governing Section 2254 Cases.[1]

---

[1] The Rules Governing Section 2254 Cases may be applied to petitions for writ of habeas corpus other than those brought under § 2254 at the Court's discretion. See, Rule 1 of the Rules Governing Section 2254 Cases. Civil Rule 81(a)(2) provides that the rules are "applicable to proceedings for . . . habeas corpus . . . to the extent that the practice in such proceedings is not set forth in statutes of the United States and has heretofore conformed to the practice of civil actions."

3

The Ninth Circuit has allowed respondents to file a motion to dismiss in lieu of an answer if the motion attacks the pleadings for failing to exhaust state remedies or being in violation of the state's procedural rules. See, e.g., O'Bremski v. Maass, 915 F.2d 418, 420 (9th Cir. 1990) (using Rule 4 to evaluate motion to dismiss petition for failure to exhaust state remedies); White v. Lewis, 874 F.2d 599, 602-03 (9th Cir. 1989) (using Rule 4 as procedural grounds to review motion to dismiss for state procedural default); Hillery v. Pulley, 533 F.Supp. 1189, 1194 & n.12 (E.D. Cal. 1982) (same). Thus, a respondent can file a motion to dismiss after the Court orders a response, and the Court should use Rule 4 standards to review the motion. See Hillery, 533 F. Supp. at 1194 & n. 12.

As discussed above, the Rules Governing Section 2254 Cases do not expressly provide for motion practice; rather, such motion practice must be inferred from the structure of the rules themselves. Hillery, 533 F.Supp. at 1195. For example, Rule 11 provides as follows:

> The Federal Rules of Civil Procedure, to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules.

Rule 11 of the Rules Governing Section 2254 Cases. (Emphasis supplied). Because of the peculiar and unique nature of habeas proceedings, as a general rule, neither Rule 12(b)(6) nor summary judgment motions under Rule 56 are particularly appropriate. Given the nature of a habeas corpus petition, Anderson v. Butler, 886 F.2d 111, 113 (5th Cir. 1989) (modern habeas corpus procedure has the same function as an ordinary appeal); O'Neal v. McAnnich, 513 U.S. 440, 442, 115 S.Ct. 992 (1995) (federal court's function in habeas corpus proceedings is to "review errors in state criminal trials"(emphasis omitted)), motions for summary judgment are unnecessary because petitions may be decided immediately by the Court following submission of the pleadings provided no material issues of fact exist. See, 1 J. Liebman, *Federal Habeas Corpus Practice and Procedure,* § 17.3 (1988) (The habeas corpus statute authorizes -- indeed, it seems to *require* -- the court treat the petition itself as the equivalent of a petitioner initiated summary judgment motion).

Similarly, a Rule 12(b)(6) motion attacking the sufficiency of the pleading in the petition does not comfortably fit within the habeas landscape either. As mentioned, the district court is already tasked with the responsibility to initially screen the petition for sufficiency pursuant to Rule 4

---

Fed. R. Civ. P 81(a)(2).

4

of the Rules Governing Section 2254 cases. Here, the Court's order requiring Respondent to file a response was issued only *after* the Court had undertaken its Rule 4 obligation. Thus, at that point, the Court had, by implication, already found the petition's pleadings sufficient to proceed. Premising a motion to dismiss on Rule 12(b)(6), as Respondent has done, is therefore redundant in that it essentially requests that the Court to conduct a pleading examination already completed.

Thus, although it appears that both Petitioner and Respondent are misguided in their heavy reliance on the Federal Rules of Civil Procedure, and that they have not fully appreciated the unique requirements of habeas proceedings or the Court's wide latitude under the Rules Governing Section 2254 Cases, the Court is of the opinion that denying Respondent's motion to dismiss solely on narrow procedural grounds and then requiring an answer that would, in all likelihood, raise the same issue again based on the same evidence, would be an inefficient use of the parties' time as well as the Court's resources. Instead, the Court has the inherent power under the Rules Governing Section 2254 Cases to construe Respondent's motion as an answer on the merits and Petitioner's opposition and motion to dismiss as a traverse. So construing the filings, the Court would then be in a position to rule on the merits of the petition without the need for further development of the record or additional briefing.

Such an approach is entirely consistent with the Rules Governing Section 2254 Cases. Historically, habeas practice provided only two dispositions for petitions: summary dismissal or a full hearing. Hillery, 533 F.Supp. at 1196. However, the drafters of the present Rules Governing Section 2254 cases believed that, in some instances, an intermediate process, through the device of an expanded record under Rule 7 might be advantageous. Id. "The purpose [of Rule 7] is to enable the judge to dispose of some habeas petitions not dismissed on the pleadings, without the time and expense required for an evidentiary hearing...Authorizing expansion of the record will, hopefully, eliminate some unnecessary hearings." Advisory Committee Note to Rule 7.

In effect, Respondent has sought to expand the record beyond the petition and attached exhibits by submitting additional documents that bear upon the disciplinary hearing that lies at the heart of this case. Petitioner does not dispute the authenticity of these documents. To the contrary, Petitioner argues that he has been aware of these documents and, indeed, has relied upon them for

the drafting of his petition.  Nor does it appear that Petitioner believes additional documents or evidence need be included in the present record, because, after making his procedural argument, Petitioner spends the remainder of his opposition dealing with the merits of his case vis-a-vis the disputed disciplinary hearing.  Nor does Petitioner raise any disputed issues of fact; rather, Petitioner's arguments on the merits of his petition are entirely legal ones.   By filing this motion to dismiss, Respondent has clearly evidenced its belief that the present record, as presently constituted, is sufficient for this Court to determine the merits of the case.   Under those circumstances, the Court agrees with the parties that there are no controverted issues of fact, that the present record is sufficient, and that no additional evidence is required for the Court to reach a decision on the merits of the petition.

Accordingly, the Court will construe Respondent's motion to dismiss as an answer on the merits, and will likewise construe Petitioner's motion to dismiss and opposition as a traverse. Having resolved that procedural tangle, the Court now turns to the merits of Petitioner's claims.

### B.  Petitioner's Claims Are Without Merit.

Prisoners cannot be deprived of their constitutional rights entirely, but their rights may be diminished by the needs and objectives of the institutional environment.  Wolff v. McDonnell, 418 U.S. 539, 555, 94 S. Ct. 2963 (1974).  Prison disciplinary proceedings are not part of a criminal prosecution, so a prisoner is not afforded the full panoply of rights in such proceedings.  Id. at 556. Thus, a prisoner's due process rights are moderated by the "legitimate institutional needs" of a prison.  Bostic v. Carlson, 884 F.2d 1267, 1269 (9th Cir. 1989), citing Superintendent, etc. v. Hill, 472 U.S. 445, 454-455, 105 S. Ct. 2768 (1984).

However, when a prison disciplinary proceeding may result in the loss of good time credits, due process requires that the prisoner receive: (1) advance written notice of at least 24 hours of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action.  Hill, 472 U.S. at 454; Wolff, 418 U.S. at 563-567.  In addition, due process requires that the decision be supported by "some evidence."  Hill, 472 U.S. at 455, citing United States ex rel. Vatauer v. Commissioner of

Immigration, 273 U.S. 103, 106 (1927).

As mentioned, Petitioner's main argument is that there was insufficient evidence to find him guilty of Possession of a Hazardous Tool, i.e., a cellular telephone. Petitioner also contends that the notice of charges was insufficient because it charged him with an offense he could not have committed.

On February 20, 2008, correctional officers conducted a search of the cell of inmate Jonathan Santiago and discovered a red Samsung cellular telephone hidden in Santiago's locker. Santiago was issued an incident report and placed in the Secure Housing Unit ("SHU"). Another inmate, Ariel Liriano-Blanco, was also implicated in the matter and placed in the SHU. Two days later, while searching the property of Santiago and Liriano-Blanco, correctional officers discovered two "SIM" cards hidden in the back of a mirror. The SIM cards contained three telephone numbers. The phone numbers were cross-referenced with the numbers each prisoner had listed in the Inmate Telephone System ("ITS"). Two of the numbers on the SIM cards were listed to only one inmate, i.e., Petitioner. (Doc. 17, Ex. A).

On April 10, 2008, Petitioner received Incident Report #1720638, for a violation of Code 108, Possession of a Hazardous Tool (i.e., cellular phone). (Doc. 17, Ex. B). Prohibited Act Code section 108, set forth in 28 C.F.R. § 541.13, is defined as:

> "Possession, manufacture, or introduction of a hazardous tool (Tools most likely to be used in an escape or escape attempt or to serve as weapons capable of doing serious bodily harm to others; or those hazardous to institutional security or personal safety[.]..."

The matter was referred from the Unit Discipline Committee ("UDC") to a DHO for further hearing because the severity of the potential sanctions exceeded the authority of the UDC. (Id.).

On April 11, 2008, Petitioner was provided a copy of the charge of Possession, Manufacture, or Introduction of a Hazardous Tool, Code 108. (Doc. 17, Ex. C). Petitioner was also advised of his rights at that time and he signed the advisement of rights acknowledging the same. (Id.).

On April 24, 2008, the disciplinary hearing was held before the DHO. (Doc. 17, Ex. A). Petitioner appeared at the hearing and denied the charging, stating, "I haven't used the phone. I gave that number to Santiago to call them." (Id.). Petitioner requested no witnesses at the hearing, and none testified. (Id.). After reviewing all of the evidence, the DHO found Petitioner guilty of

committing the prohibited act. The finding was based on the information submitted by the reporting employee as well as documentary evidence consisting of a photograph of the recovered cellular phone, the approved inmate phone list displaying two numbers found in the recovered SIM card, the ITS search of specified phone numbers that revealed Petitioner was the only inmate with those two numbers on his approved phone list, the Inmate Telephone Request form signed by Petitioner requesting that those two numbers be placed on his phone list, and Petitioner's own statement that he gave those numbers to Santiago to call. (Id.).

The DHO summarized the primary evidence as follows:

> First, the written report of SIS K. Sy which states that on 02-20-2008 at 1045 hours, Officer J. Mize found a red "Samsung cellular telephone hidden under the locker of [a] cubicle belong[ing] to Santiago, Jonathan...The SIM car was missing from the cell phone. Santiago was given an incident report and placed in the SHU. Inmate Liriano, Ariel [Santiago's roommate]...was also placed in the SHU. On 02-22-2008, while searching Santiago and Liriano's property, Sy found two SIM cards hidden in the back of a mirror with the writing "columbia" which is Santiago's nickname. The SIM cards revealed three telephone numbers...The telephone numbers were forwarded to the Office of the Inspector General (OIG) for further investigation. On 04-10-2008, Sy received a copy of the subpoena which contained various telephone numbers called by this cellular phone. These telephone numbers were cross-referenced with the Inmate Telephone System (ITS) at the Taft Correctional Institution. Based on the information from the subpoenas, he determined you were in possession and utilized the cell phone to call [two numbers]. These telephone numbers were not found on any other inmate's approved telephone list. Your possession of a cell phone provides you with unmonitored phone calls.

(Doc. 17, Ex. A).

Based on the foregoing evidence, the DHO concluded as follows:

> "Any reasonable person can conclude that you used this telephone to call the above referenced numbers since they were on your approved phone list and not any other inmates. For this reason that DHO has deemed your denials less than credible. Obviously, in order to call the number, you had to have possession of the cellular telephone. A hazardous tool is one which possess [sic] a serious threat to the security of the institution. A cellular telephone does this due to it's [sic] ability to provide the user with unmonitored calls that can be used to conduct drug trafficking, plan an escape, or numerous other illegal activities.

> Therefore, having considered all relevant evidence, the DHO finds the greater weight of the evidence supports the finding that you committed the prohibited act of Possession, Manufacture, or Introduction of a Hazardous Tool, code 108."

(Id.).

As a result of the findings, the DHO assessed sanctions of 40 days good conduct credits and 30 days of disciplinary segregation. (Doc. 17, Ex. A). The DHO explained the reasons for the sanctions as follows:

8

> "These sanctions are imposed in order to stress the seriousness of your actions and to punish you. A cell phone can be used to arrange an escape or an escape attempt and it can be connected to the threat that illicit drugs pose to institutional security doe to the inability to monitor phone calls. These pose a serious threat to the security of the institution. The sanctions imposed are to cause you to refrain from committing this, or any other prohibited act in the future."

(Id.).

For all of the reasons contained in the DHO's report, it is obvious that "some evidence" exists to support a finding that Petitioner had, at some point, possessed the cell phone in order to place at least two calls. Although Petitioner adamantly denies ever possessing the cell phone or placing the calls himself, the DHO found Petitioner's protestations "less than credible." In so doing, the DHO based his finding of guilt on the circumstantial evidence that the SIM cards contained two numbers that only Petitioner had on his call list and on Petitioner's tacit admission that he knew Santiago had a cell phone and had asked Santiago to make the calls. See Hill, 472 U.S. at 455. The fact that the cell phone was not found in Petitioner's possession or that Petitioner was not directly observed using the phone does not negate a finding of guilt based on the weight of the circumstantial evidence discussed above.

Moreover, it is clear that Petitioner received notice of the hearing and the charge, that he was afforded an opportunity to be appear and to present witnesses, and that the DHO provided a written explanation of both his reasons for finding Petitioner guilty and his reasons for assessing the sanctions imposed in this case. Therefore, the Court has little difficulty concluding that Petitioner was afforded a full hearing with all procedural protections and a written explanation for the reasons underlying the sanctions. See Hill, 472 U.S. at 454; Wolff, 418 U.S. at 563-567; 28 C.F.R. 541.13, Code 108, Prohibited Acts, and Sanctions. Accordingly, the Court finds no constitutional or statutory infirmity in the disciplinary proceeding at issue in this case.

Petitioner also maintains that he did not receive proper notification of the charge because he should have been charged under Code 297 [2] instead of Code 108, since the former charge more

---

[2] Respondent notes that Prohibited Act Code section 297 is for "use of the telephone for abuses other than criminal activity (e.g., circumventing telephone monitoring procedures, possession and/or use of another inmate's PIN number; thiry-party calling; third-party billing; using credit card numbers to place telephone calls; conference calling; talking in code)." (Doc. 17, p. 6, fn. 2).

9

closely fits the facts in this case and because a phone found in another inmate's cell is not a weapon or tool likely to be used in an escape. (Doc. 1, p. 14). As Respondent correctly points out, however, Petitioner was charged with a Code 108 violation, not a Code 297 violation, and thus the notice of charge given to Petitioner reflected the violation actually charged, not some other uncharged offense. The fact that another, hypothetical charge also fits the facts of this incident does not diminish the validity of the notice actually provided to Petitioner that he was being charged for a Code 108 violation. Thus, Petitioner's claim that he did not have sufficient notice of the charge or information on which to prepare his case is specious.

Moreover, although Petitioner repeatedly maintains that, because the phone was found in another inmate's cell, then, *ipso facto*, the phone could not be used by Petitioner in an escape, Petitioner has provided no evidence or reasoning to support such a claim. It is entirely unclear to the Court why the physical location of the phone at the time it was found is in any way relevant to the uses Petitioner could have made of the phone when he was in actual physical possession of it. As mentioned above, the DHO rejected Petitioner's version of events-- i.e., that Petitioner told Santiago to call the two numbers--as incredible, and found instead that the weight of the evidence established that Petitioner himself had personally used the phone to make at least two calls. The Court has already concluded that the DHO's findings are supported by "some evidence." Thus, the fact that the phone was later discovered in another inmate's cell has no bearing on whether the evidence here supported the charged offense or whether Petitioner received adequate notice of the offense for which he was charged.

///
///
///
///
///
///
///
///

**ORDER**

For the foregoing reasons, the Court HEREBY ORDERS as follows:

1. Respondent's motion to expand the petition (Doc. 17), is GRANTED;
2. Petitioner's motion to dismiss Respondent's motion to dismiss (Doc. 18), is DENIED;
3. The petition for writ of habeas corpus (Doc. 1), is DISMISSED; and,
4. The Clerk of the Court is DIRECTED to enter judgment and close the file.
5. A certificate of appealability is not required in this case.

IT IS SO ORDERED.

Dated:   **February 18, 2010**                             **/s/ Jennifer L. Thurston**
                                                          UNITED STATES MAGISTRATE JUDGE